```
             UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

Dana E. Moody

   v.                                      Civil No. 16-cv-21-JL

PennyMac Loan Services, LLC


**REPORT AND RECOMMENDATION**

In a case that has been removed from state court, Dana E. Moody, proceeding pro se, brings this action against PennyMac Loan Services, LLC ("PennyMac") alleging violations of the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2601 et seq. Before the court for a Report and Recommendation is PennyMac's motion to dismiss Moody's amended consolidated complaint. Doc. no. 31. For the reasons below, the court recommends that the district court grant PennyMac's motion to dismiss.

**Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be

granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation and quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

Because Moody is proceeding pro se, the court must liberally construe his complaint. Erikson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). However, "'pro se status does not insulate a party from complying with procedural and substantive law.' Even under a liberal construction, the complaint must adequately allege the elements of a claim with the requisite supporting facts." Chiras v. Associated Credit Servs., Inc., 12-10871-TSH, 2012 WL 3025093, at *1 n.1 (D. Mass. July 23, 2012) (quoting Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) (internal citation omitted).

In addition, where, as here, exhibits are attached to the complaint, the court may consider the exhibits "for all purposes, including Rule 12(b)(6)" motions. Trans-Spec Truck Serv. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)

(quotation marks omitted).[1]  If "a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."  Yacubian v. United States, 750 F.3d 100, 108 (1st Cir. 2014), cert. denied, 135 S. Ct. 1915 (2015) (quoting Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 229 n.1 (1st Cir. 2013)).

## Background

### I. Factual Background

The relevant facts, construed in the light most favorable to Moody, are as follows:

Moody previously owned a home in New Boston, New Hampshire. Compl. ¶ 1, doc. no. 30.[2]  In 2010, PennyMac began to service

---

[1] The court notes that documents from an individual seemingly affiliated with the New Hampshire Banking Department are attached as "Exhibit A" to Moody's objection to the motion to dismiss.  Doc. no. 33 at 9-11.  In a subsequent motion, PennyMac requests that the court strike the exhibit.  Doc. no. 34. "Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment."  Trans-Spec Truck Serv., 524 F.3d at 321 (emphasis added).  In fairness to the parties, the court will not convert PennyMac's motion into a motion for summary judgment.  Consequently, the court will not consider the supplementary materials submitted by Moody in his objection, and recommends that the district court grant PennyMac's motion to strike.

[2] The complaint referenced is Moody's amended consolidated complaint submitted on April 6, 2016.

Moody's mortgage loan. Id. ¶ 2; Compl. Ex. C, doc. no. 30-3. In July 2014, Moody's home was foreclosed and sold at auction. Compl. ¶ 3; Compl. Ex. C.

The next year, in April 2015, Moody sent a letter to PennyMac requesting five categories of documents:

> 1. Copy of the loan modification agreement or contract executed on or about March/April 2012
>
> 2. Copies of other loan modification agreements, forbearance programs, and any and all other agreements, programs, contracts, etc., either permanent or temporary, that affected this account
>
> 3. Copies of all correspondence sent in the 12 months prior to the foreclosure date of 7/22/14 notifying the borrowers of any breach, default, termination, or end of any and all notes, agreements, programs, and contracts as identified in question 2 above
>
> 4. Copy of the recorded Assignment of Mortgage from Mortgage Lenders Network to Citimortgage
>
> 5. Copy of the recorded Assignment of Mortgage from Citimortgage to PennyMac

Compl. Ex. A, doc. no. 30-1. The letter noted that the requests were "valid written request[s] covered under [RESPA]." Id.

The next month, PennyMac acknowledged receipt of Moody's April 2015 letter and soon after responded in part to Moody's requests. Compl. Ex. B, doc. no. 30-2; Compl. Ex. C, doc. no. 30-3. PennyMac's response to Moody included five documents. Compl. Ex. C. None of the documents, however, related to documents requested in categories four or five of Moody's April

4

2015 letter. Compl. ¶¶ 11-12; Compl. Ex. C. PennyMac explained in its response to Moody that these two requests were "overbroad, irrelevant, or an unduly burdensome request for information . . . ." Compl. Ex. C.

In August 2015, Moody sent another letter to PennyMac. Compl. ¶ 14; Compl. Ex. D, doc. no. 30-4. Moody's August 2015 letter requested eight additional categories of documents, including copies of recorded assignments of Moody's mortgage, loan modification agreements, and other correspondence. Compl. Ex. D. Like Moody's April 2015 letter, his August 2015 letter stated that these requests were "valid written request[s] covered under [RESPA]." Id. PennyMac acknowledged receipt of Moody's August 2015 letter but never responded to Moody's document requests. Compl. ¶¶ 15-16; Compl. Ex. E, doc. no. 30-5.

In September 2015, Moody sent another letter, this time addressed to PennyMac's foreclosure counsel in Rhode Island. Compl. Ex. F, doc. no. 30-6. The letter requested five additional categories of documents and again claimed that the requests were "qualified written request[s] covered under RESPA . . . ." Compl. Ex. F. Neither PennyMac nor its foreclosure counsel responded to Moody's September 2015 letter. Compl. ¶ 19.

In October 2015, Moody sent a third letter to PennyMac. Compl. ¶ 20; Compl. Ex. G, doc. no. 30-7. The October 2015 letter requested documents initially requested in Moody's earlier letter to PennyMac's foreclosure counsel and five additional categories of documents. Compl. ¶¶ 20-21; Compl. Ex. G. PennyMac acknowledged receipt of Moody's October 2015 letter but again did not respond to Moody's document requests. Compl. ¶ 22-23; Compl. Ex. H, doc. no. 30-8.

## II. Procedural Background

Based on the foregoing, Moody filed four separate claims in New Hampshire state court alleging PennyMac's responses (or nonresponses) to Moody's document requests violated RESPA. See doc. no. 1; see also Dockets 16-cv-00022-PB, 16-cv-00024-LM, & 16-cv-00025-JL.[3] In January 2016, PennyMac removed Moody's four state actions to this court. Doc. no. 1. PennyMac next moved to dismiss each of Moody's actions for failure to state a claim. Doc. nos. 6, 18, 22, & 26. Moody objected to PennyMac's motions to dismiss and additionally filed motions to remand (doc. nos.

---

[3] In a letter to the state court, Moody stated that "[w]hile I probably could have, and perhaps should have, brought twenty small claims actions in this matter, I did not wish to inundate the Court by such actions. Accordingly I grouped the violations into four actions based upon the fact that the violations resulted when the Defendant failed to respond to four letters that were sent by the Plaintiff" from April to October 2015. Doc. no. 1-1 at 18

6

10, 19, 23, & 27) and for default judgment (doc. nos. 11, 20, 24, & 28).

In March 2016, the district judge consolidated Moody's four actions and ordered him to file a consolidated complaint. Doc. no. 16.[4] Roughly two weeks after Moody filed a consolidated complaint (doc. No. 30), PennyMac filed a new motion to dismiss. Doc. no. 31. The district judge referred PennyMac's pending motion to dismiss for a Report and Recommendation.

## Discussion

### I. RESPA

"RESPA requires the servicer of a federally-related mortgage loan to respond to certain borrower inquiries, which the statute terms "'qualified written requests.'" O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 34 (D. Mass. 2014) (citing 12 U.S.C. § 2605). Under the statute, a "servicer" is "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). A qualified written request to a servicer ("QWR") is

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

---

[4] Because Moody consolidated his complaint, the court later denied PennyMac's earlier motions to dismiss as moot.

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  If a servicer receives a valid QWR, it has several obligations:

> a servicer must acknowledge its receipt . . . and if the servicer identifies an error in the account, make appropriate corrections to the borrower's account and notify the borrower of the correction . . . .  If the servicer determines that the account is not in error, it must provide the borrower with a written explanation or clarification stating the reasons why the servicer believes the borrower's account is correct.  If the request pertains to a request for information, the servicer must either provide the information to the borrower or explain by such information is unavailable.

Ramos-Gonzalez v. First Bank of Puerto Rico, No. CIV. 14-1749 PAD, 2015 WL 6394409, at *2 (D.P.R. Oct. 22, 2015) (internal citations omitted) (citing 12 U.S.C. § 2605(e)).

## II. **PennyMac's Motion to Dismiss**

In its motion to dismiss, PennyMac contends that Moody's consolidated complaint must be dismissed because it fails to allege any violation under RESPA.  PennyMac makes five arguments: (1) any QWR sent after the foreclosure sale does not trigger any duties under RESPA; (2) it was not required to

respond to any QWR's found in Moody's August, September, or October 2015 letters because the requests were sent more than a year after the foreclosure sale; (3) Moody's September 2015 letter was not a QWR because it was not sent to PennyMac; (4) PennyMac properly responded to any legitimate request; and (5) Moody has failed to adequately plead damages.

    A.   <u>PennyMac's Claim That It Had No Duties under RESPA</u>

PennyMac's first argues that "because a servicing relationship usually ends at the time of a foreclosure sale, a QWR sent any time after the foreclosure sale does not trigger any duties under RESPA."  Doc. no. 31-1 at 6.  On its face, PennyMac's argument is persuasive.  In 2014, Moody's home was foreclosed and sold at auction.  Compl. ¶ 3; Compl. Ex. C.  Moody did not begin to send purported QWR's until nearly a year after the foreclosure.  Compl. Ex. C.  Thus, when Moody began to send QWR's to PennyMac, PennyMac was no longer a "servicer" under RESPA because there was nothing to service – the home was already foreclosed.  <u>See</u> <u>Sanchez v. Onewest Bank</u>, FSB, No. 11 CV 6820, 2013 WL 139870, at *3 (N.D. Ill. Jan. 10, 2013) ("Even assuming that [plaintiff's] letter constituted a QWR, [defendant] could not have been servicing the loan at that time because the Circuit Court had already approved the judicial sale."); <u>Brothers v. Bank of Am., N.A.</u>, No. 5:12-CV-03121 EJD,

2012 WL 4471590, at *3 (N.D. Cal. Sept. 26, 2012) (finding it "unlikely the QWR could relate to loan servicing when it was sent in January, 2012, since, at that point, [p]laintiff had been in default since sometime in late 2008, and the foreclosure process had commenced in April, 2009").

However, after considering the attached exhibits to the complaint and construing reasonable inferences in the pro se plaintiff's favor, it plausibly remains that PennyMac still maintains a servicing relationship with Moody.  First, Moody's complaint directly states that PennyMac "is the current mortgage servicer for the Plaintiff, with servicing beginning on or about [July 2014]."  Compl. ¶ 2 (emphasis added).  Second, three of PennyMac's responses to Moody acknowledging receipt of his letters notify him that "all loan inquiries should be directed to the current loan servicer, PennyMac Loan Services, LLC." Compl. Exs. B, E, & H (emphasis added).  As a result, if the motion to dismiss were not granted, the issue of whether PennyMac maintained a servicing relationship with Moody after the 2014 foreclosure should be resolved on a properly developed summary judgment record.

B.  PennyMac's Claim that Moody's August, September, and October 2015 QWR's Were Untimely

PennyMac cites 12 C.F.R. § 1024.36(f)(v)(B) to contend that it is not required to respond to any QWR's sent more than one year after the mortgage loan was discharged.  Accordingly, PennyMac argues that it had no obligation to respond to Moody's August, September, or October 2015 purported QWR's because they were sent more than a year after the April 2014 foreclosure sale.

Under RESPA, a borrower may make a request for information from a loan servicer for up to one year after a mortgage loan is discharged.  12 C.F.R. § 1024.36(f)(1)(v)(B).  The Bureau of Consumer Financial Protection's comments on the regulation provide some insight on when a loan is "discharged:"

> For purposes of the Bureau's mortgage servicing rules, as opposed to bankruptcy purposes, a mortgage loan is discharged when both the debt and all corresponding liens have been extinguished or released, as applicable.  The Bureau believes a borrower should have the benefit of the error resolution, information request, and record retention provisions so long as a debt or lien remains because only after both have been eliminated will there be no further possibility of a borrower needing to seek servicing information or to assert a servicing error.

Amendments to the 2013 Mortgage Rules Under the Equal Credit Opportunity Act (Regulation B), Real Estate Settlement Procedures Act (Regulation X), and the Truth in Lending Act

11

(Regulation Z), 78 FR 60382-01, 2013 WL 5428278 (Oct. 1, 2013) (emphasis added).

PennyMac alleges that Moody's mortgage was discharged in April 2014 by the foreclosure sale. So, according to PennyMac, any QWRs sent by Moody after April 2015 were untimely. However, after reviewing the complaint and its attached exhibits, the court cannot yet make a determination of whether "all corresponding liens have been extinguished or released" after the foreclosure sale. Because the court is unable to determine whether Moody's mortgage loan was "discharged" in April 2014, it consequently cannot determine whether Moody's August, September, or October 2015 purported QWRs were untimely. It may be true that the mortgage loan was discharged by the April 2014 sale. Yet, based on the current record, if the motion to dismiss were not granted, this issue would be more fittingly resolved on a properly developed summary judgment record.

  C. <u>PennyMac's Claim That Moody's September 2015 Letter Was Not a QWR</u>

PennyMac next argues that because the purported QWRs in Moody's September 2015 letter were sent to PennyMac's foreclosure counsel – not PennyMac itself – the requests were not valid QWRs. PennyMac contends therefore that is cannot be

liable for any information requested in Moody's September 2015 letter.

"A QWR is written correspondence from a <u>borrower to the servicer</u> . . . ." <u>LeDoux v. JP Morgan Chase, N.A.</u>, No. 12-CV-260-JL, 2012 WL 5874314, at *9 (D.N.H. Nov. 20, 2012) (emphasis added).  Therefore, in order for a request to be valid QWR, it must be sent to the actual servicer, not outside counsel.  <u>See Griffin v. Citifinancial</u> Mortgage Co., No. 3:05CV1502, 2006 WL 266106, at *2 (M.D. Pa. Feb. 1, 2006) ("[P]laintiffs fail to state a claim because they did not send a qualified written request to their servicer, and instead sent it to their servicer's outside counsel.").  Here, because Moody sent his September 2015 letter to PennyMac's outside counsel in Rhode Island, the letter is not a valid QWR request.  This is especially clear here when Moody was notified in earlier letters from PennyMac that "all loan inquiries should be directed to . . . PennyMac" at its California address.  <u>See</u> Compl. Exs. B & E.

Although Moody notes in his September 2015 letter to PennyMac's foreclosure counsel that he sent a duplicate copy to PennyMac, Moody attaches no such copy to his complaint.  Further, it appears that the requests in Moody's September 2015 letter seek information from the foreclosure counsel, rather than PennyMac itself.  Compl. Ex. F.  Therefore, because Moody's

September 2015 letter seeks information from outside counsel and not the actual servicer, Moody has failed to provide sufficient facts to plead that his September 2015 requests were valid QWRs.

    D.    <u>PennyMac's Claim That It Properly Responded to Any "Legitimate" RESPA Request</u>

PennyMac next argues that, even if Moody's letters were timely and it maintained a servicer relationship with Moody, it nonetheless "fully complied with RESPA by providing all relevant documents that related to servicing." Doc. no. 31-1 at 9. As to the April 2015 letter, PennyMac claims it provided all the documents requested by Moody, except documents related to the recorded assignment of Moody's mortgage from Mortgage Lenders Network to Citimortgage and its subsequent assignment to PennyMac. Compl. ¶¶ 9-12, Compl. Exs. A & C.[5] PennyMac claims that it was not obligated to provide this information because the requests did not pertain to the actual servicing of Moody's mortgage loan.

    Under REPSA, "[a] letter does not constitute a QWR . . . if the letter does not relate to the servicing of a borrower's loan as defined under 12 U.S.C. § 2605(i)(3) or does not identify any error as required by § 2605(e)(1)(B)." <u>Donaldson v. U.S. Bank</u>

---

[5] Moody's complaint appears to agree with PennyMac's contention that it otherwise provided Moody with all other documents requested in the April 2015 letter. Compl. ¶ 12.

Nat. Ass'n, No. 12-13435, 2014 WL 4863080, at *5 (E.D. Mich. Sept. 30, 2014). "With that in mind, there is a distinction between loan servicing disputes and those regarding the borrower's contractual relationship with the lender. Hence, challenges to a loan's validity or its terms are not considered [QWRs] under Section 2605(e)." Ramos-Gonzalez v. First Bank of Puerto Rico, No. CIV. 14-1749 PAD, 2015 WL 6394409, at *3 (D.P.R. Oct. 22, 2015). Here, because the unanswered inquiries from Moody's April 2015 letter related to the assignments, rather than the servicing, of Moody's mortgage, PennyMac was not obligated to respond to the requests under RESPA. See Sutters v. U.S. Bank, N.A., No. 14-13567, 2015 WL 4104846, at *15 (E.D. Mich. July 8, 2015) (finding a plaintiff's request for a copy of "all assignments of the security instrument" was not a valid QWR).[6]

    E.    PennyMac's Claim That Moody Has Failed to Plead Sufficient Damages

RESPA allows an individual plaintiff to recover two types of damages: (1) "any actual damages to the borrower as a result of the failure;" and (2) "any additional damages, as the court

---

[6] Because the court finds that Moody has failed to plead sufficient damages, as discussed below, the court does not discuss PennyMac's remaining arguments that it was not obligated to respond to Moody's August, September, or October 2015 purported QWRs. Doc. no. 31-1 at 12-17.

may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1). "Because damages are a necessary element of a RESPA claim, failure to plead damages is fatal to a RESPA claim." Menashe v. Bank of New York, 850 F. Supp. 2d 1120, 1134 (D. Haw. 2012).

PennyMac contends that Moody has not alleged actual damages. The court agrees. In full, Moody's complaint alleges that PennyMac's failure to respond to his purported QWRs caused him harm because, without the requested documents, he is hindered from continuing his "ongoing investigation into [PennyMac's] wrongful and/or illegal foreclosure of [his] home as well as other wrongful and/or illegal actions by [PennyMac] regarding [his] account." Compl. ¶ 27. To allege actual damages, however, Moody must allege a pecuniary loss. Ghuman v. Wells Fargo Bank, N.A., 989 F. Supp. 2d 994, 1007 (E.D. Cal. 2013). Even construing all inferences in Moody's favor, it appears that any pecuniary damage Moody has incurred relate to the foreclosure of his home. These damages, though, occurred before any alleged RESPA violations by PennyMac. Thus, Moody has failed to plead any actual damages.

Nevertheless, Moody may claim statutory damages if he shows that PennyMac engaged in "a pattern or practice of noncompliance

. . . ." 12 U.S.C. § 2605(f)(1)(B). Moody alleges in his complaint that by failing to fully respond to his requests PennyMac "has engaged in a pattern or practice of noncompliance of RESPA." Compl. ¶ 29.

Over the course of four letters from April 2015 to October 2015, Moody sent PennyMac (or its outside counsel) twenty purported QWRs. Compl. ¶¶ 9-23, 31. Important to determining whether statutory damages apply, it is more appropriate to view these requests as four, rather than twenty, alleged violations of RESPA. See McLean v. GMAC Mortgage Corp., 595 F. Supp. 2d 1360, 1363-65 (S.D. Fla. 2009) (concluding that eight QWRs sent over two letters were only two, rather than eight, alleged violations of RESPA).

As such, Moody's alleged violations do not establish a pattern or practice of noncompliance. As described above, two of Moody's grouped requests – the April 2015 and September 2015 letters – were not valid QWRs. Thus, the court is left with only two properly alleged RESPA violations – PennyMac's failure to respond to Moody's August and October 2015 letters. A failure to respond to two letters of purported QWRs, however, does not show a pattern or practice of noncompliance under RESPA. See McLean, 595 F. Supp. 2d at 1365; In re Maxwell, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) ("[T]he Court is

unpersuaded that the Debtor has established a 'pattern or practice' for purposes of RESPA's statutory damage provision by showing just two violations."). Accordingly, because Moody has failed to plead actual or statutory damages, PennyMac's motion to dismiss should be granted.

## Conclusion

For the foregoing reasons, the Court recommends that PennyMac's motion to dismiss (doc. no. 31) be granted. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

June 6, 2016

cc: Dana E. Moody, Pro Se
    Kevin P. Polansky, Esq.